UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EDDIE DUTCHOVER,<br><br>                      Plaintiff,<br><br>    v.<br><br>MOAPA BAND OF PAIUTE INDIANS, et al.,<br><br>                      Defendants. | Case No. 2:19-cv-01905-KJD-BNW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss (ECF #28). Plaintiff filed a response in opposition (ECF #37) to which Defendants replied (ECF #42).

    I.      <u>Factual and Procedural Background</u>

Plaintiff Eddie Dutchover ("Dutchover") filed this action against Defendant Moapa Band of Paiute Indians ("the Tribe"), eight individual Tribe members, the Moapa Tribal Council, and Moapa Tribal Enterprises. (ECF #8, at 1). Dutchover was employed as a police officer with the Moapa Tribal Police Department for almost seven years. <u>Id.</u> at 3. Dutchover describes the work environment as hostile because of the way the Tribe members treated him as a Caucasian/Hispanic man. <u>Id.</u> at 5. Some of the Tribe members referred to Dutchover as "white cop," "cracker," and "tribal cop killer." <u>Id.</u> at 4. Others, including members of the Moapa Tribal Council, indicated to Dutchover a preference to "fire all the white people and hire only native/Indian people." <u>Id.</u> at 8. The same Tribe members have referred to Dutchover as "wonder bread," "whitey," and "HICU" which is a Paiute word for "white people." <u>Id.</u> Additional harassment included threats to fire Dutchover, refusing to give Dutchover a portion of a settlement the Tribe had received, requesting that Dutchover not give citations to friends or he would be fired, not including Dutchover in pay raises for general store employees, and reminders that Dutchover had killed a Tribe member in an officer-involved shooting for which Dutchover

was deemed to use appropriate force in self-defense. Id. at 4–19.

Dutchover originally filed this suit without the assistance of counsel. (ECF #1). He has since obtained counsel and filed an amended complaint. (ECF #8). The complaint lists seven causes of action. Id. at 19–26. First is a violation of Title VII, 42 U.S.C. § 2000e to 2000e-17, alleged against all defendants. Id. at 20. Second, retaliation under federal law, 42 U.S.C. § 2000e-3, alleged against all defendants. Id. at 20–21. Third, violation of 42 U.S.C. § 1983 Equal Protection, alleged against all defendants. Id. at 21–22. Fourth, violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981, alleged against all defendants. Id. at 22. Fifth, civil conspiracy, alleged against all defendants. Id. at 23. Sixth, intentional/negligent infliction of emotional distress, alleged against all defendants. Id. at 24. Finally, negligent hiring/retention, alleged against all defendants. Id. at 25.

Dutchover's service of process was difficult due to the COVID-19 pandemic. (ECF #37, at 2). The reservation was closed to all except members of the Tribe so Dutchover's process server could not enter the reservation. Id. Dutchover was granted four extensions of time for service and eventually served one person with the summonses and copies of the complaints for all the defendants. (ECF #28, at 4). Laura Perry ("Perry"), Chairwoman of the Moapa Business Council, which is the governing body of the Tribe, was approached at a restaurant off the reservation. Id. The process server approached Perry, confirmed her identity, and left ten unsealed envelopes on a stool next to her. Id. Two of the envelopes bore no name or address, while the other eight were addressed to the individual defendants named in the complaint. Id. The summonses were then returned as executed, with the box checked indicating that Laura Perry was authorized to "accept service of process on behalf of" another party. (ECF #34). In the blank portion of the summonses where the party must fill out the name of the party for whom the individual is authorized to accept service, the process server wrote "Chairwoman of Moapa Band of Paiutes Tribe." Id. This motion to dismiss then followed.

II. Legal Standard

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint does not require

"detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). All "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While the court "must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed." Hendon v. Geico Ins. Agency, 377 F.Supp.3d 1194, 1196 (D. Nev. 2019).

When considering a motion to dismiss for failure to serve, "courts must determine whether good cause for the delay has been shown on a case by case [sic] basis." In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001). District courts "must extend time for service upon a showing of good cause." Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009). Plaintiffs may be required "to show the following factors in order to bring the excuse to the level of good cause: '(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" Id. (quoting Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991)). In the absence of a showing of good cause, "the district court may extend time for service upon a showing of excusable neglect." Lemoge, 587 F.3d at 1198.

III. Analysis

A. Sovereign Immunity

Indian tribes enjoy sovereign immunity and before this action may proceed to the merits, the Court must determine whether immunity exists. Whether a party has waived its sovereign immunity is "a question of subject matter jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "The Supreme Court has characterized [sovereign] immunity as 'a necessary corollary to Indian sovereignty and self-governance,' and we employ a 'strong

presumption against [its] waiver.'" <u>Bodi v. Shingle Springs Band of Miwok Indians</u>, 832 F.3d 1011, 1016 (9th Cir. 2016) (internal citations omitted). Courts have found that there are "only two ways in which a tribe may lose its immunity from suit. Congress may abrogate tribal immunity . . . [o]r . . . a tribe may itself waive immunity." <u>Id.</u> "A tribe's sovereign immunity is a powerful protection from suit, but it is not impenetrable and may be surrendered." <u>Quinault Indian Nation v. Pearson for Estate of Comenout</u>, 868 F.3d 1093, 1097 (9th Cir. 2017). It is well "settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" <u>Santa Clara Pueblo v. Martinez</u>, 438 U.S. 49, 58 (1978) (quoting <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976)).

Dutchover does not argue that Congress has abrogated the Tribe's sovereign immunity. Instead, he argues that the Tribe waived its sovereign immunity by "entering into a federal contract and by enacting, promoting, and adhering to federal law, including Title VII." (ECF #37, at 8). According to Dutchover, the Tribe funded his employment with a federal grant. Dutchover admits that this, by itself, did not make him an employee with federal employment protection as defined in Title VII or constitute a waiver of sovereign immunity. Dutchover asks the Court to also consider the Tribe's training and policies offering protections similar to those offered by Title VII. One such anti-discrimination training was presented by an employee of the federal government. However, Dutchover has not cited a single case in which a court has ruled that similar behaviors constituted a waiver of sovereign immunity. The Tribe argues that a waiver of sovereign immunity must be express and cannot be implied by such behaviors and the Court agrees.

A waiver of tribal sovereign immunity must "manifest the tribe's intent to surrender immunity in 'clear' and unmistakable terms." <u>Bodi</u>, 832 F.3d at 1016 (internal quotations in original). The Tribe has made no such manifestation. The Ninth Circuit has held that a tribe does not waive sovereign immunity by entering into an agreement with a government agency where the agreement did not explicitly waive the immunity. <u>Maxwell v. Cnty. of San Diego</u>, 708 F.3d 1075, 1087 (9th Cir. 2013). The agreement in <u>Maxwell</u> was between a tribe's fire department and a local fire department and did not explicitly waive immunity, even though it stated that the tribe

would have "the same immunity from liability for civil damages . . . as is provided by law for the district and its employees." Id. That language was not explicit enough to waive sovereign immunity, especially when other portions of the agreement retained immunity. Id. Just because the Tribe has workplace discrimination policies similar to those found in Title VII and a government employee presented a training on the matter, does not mean that the Tribe intended to waive its sovereign immunity. That is not an explicit or unequivocal expression of a waiver.

      B.  Section 1983 Claims

Dutchover's § 1983 claims must be dismissed against the Tribe because the Tribe has not waived immunity. Additionally, "actions under section 1983 cannot be maintained in federal court for persons alleging a deprivation of constitutional rights under color of tribal law." Evans v. McKay, 869 F.2d 1341, 1347 (9th Cir. 1989). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50. None of the defendants were state employees. None of the defendants exercised any power or authority granted to them pursuant to state law. Instead, it was tribal law that gave Defendants authority. Therefore, Dutchover has failed to state a § 1983 claim against any of the defendants because they were not acting under color of state law.

      C.  Section 1981 Claims

The Tribe argues that Dutchover's § 1981 claims must be dismissed because they are merely veiled claims for disparate treatment in the employment setting and tribes are exempt from Title VII. Such claims against a Tribe are not permitted. "It would be wholly illogical to allow plaintiffs to circumvent the Title VII bar against race discrimination claims based on a tribe's Indian employment preference programs simply by allowing a plaintiff to style his claims as § 1981 suit." Taylor v. Ala. Intertribal Council Title IV J.T.P.A., 261 F.3d 1032, 1035 (11th Cir. 2001). As such, in addition to being dismissed due to the Tribe's sovereign immunity,

Dutchover's § 1981 claims against the Tribe or any of the individuals acting in their official capacity are dismissed.

However, § 1981 claims may be pursued against individuals who are not acting in their official capacity. Allen v. Mayhew, No. CIV S-04-0322-LKK-CMK, 2008 WL 697628, at *2 (E.D.Cal. Mar. 14, 2008) ("These claims are based on alleged wrongdoing of the individual, not the actions of the tribe. . . Here, plaintiff alleges specific actions on the part of certain defendants which, regardless of the actions of the casino or tribe, state a claim under § 1981."). Dutchover's complaint is vague and alleges § 1981 violations against all defendants. It does not state if the defendants are named in the cause of action in their official or individual capacities. While it is vague, the complaint does allege facts that some of the individual defendants, not acting in their official capacity with the Tribe, violated § 1981 and the claims against the individuals are not dismissed for that reason. However, as discussed *infra*, the Court lacks personal jurisdiction over the individual defendants, and for that reason the § 1981 claims against the individual defendants are dismissed.

### D. Title VII Claims

In addition to being dismissed due to the Tribe's sovereign immunity, Dutchover's Title VII claims are also dismissed because Title VII "specifically exempts Indian tribes from its coverage." E.E.O.C. v. Karuk Tribe Housing Authority, 260 F.3d 1071, 1082 (9th Cir. 2001). Because the Tribe is exempt from Title VII claims, Dutchover's claims for Title VII violations and retaliation against the Tribe are dismissed. The Title VII claims against the individuals are also dismissed because Title VII "limit[s] civil liability to the employer." Miller v. Maxwell Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993). Dutchover's complaint requests back pay for the Title VII claims which are alleged against all defendants and "individuals cannot be held liable for back pay." Id. All civil liability under Title VII is limited to employers and the Title VII claims against the individuals are dismissed.

### E. Corporate Arm of Tribe

Dutchover argues that there is a corporate entity created by the Tribe that runs the police department, is the actual employer, and does not enjoy sovereign immunity. The Tribe argues

that there is no corporate entity that runs the police department, but if there were, it would be an arm of the Tribe and enjoy sovereign immunity. The Court agrees.

To determine if an entity is an arm of a tribe that enjoys sovereign immunity, courts look at certain factors. Specifically, courts consider

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

White v. Univ. of Cal., 765 F.3d 1010, 1025 (9th Cir. 2014). In a motion to dismiss the Court must accept as true all facts pleaded in the complaint. While the Tribe states that there is no corporate entity that manages business or police relations, the complaint states that there is. If there is, it enjoys sovereign immunity. Operating the police department is an essential function of government and "core to the notion of sovereignty." Id. Additionally, "preservation of tribal cultural autonomy [and] preservation of tribal self-determination,' are some of the central policies underlying the doctrine of tribal sovereign immunity." Id. (quoting Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1188 (10th Cir. 2010)). There is no indication that the Tribe intended to create a corporate entity to run the police department that would not share the Tribe's sovereign immunity. Many of the defendants sit on the Tribe's governing board, indicating that the Tribe has involvement and control over any such corporate entity. As such, whatever corporation may exist to manage the police department would be an arm of the Tribe that enjoys sovereign immunity. None of the parties have waived sovereign immunity and the claims against the Tribe and the corporate entity that Dutchover alleges controls the police department are dismissed.

### F. Individual Defendants

While many of the claims against the individual defendants are dismissed for substantive reasons, the claims against the individual defendants must also be dismissed for procedural deficiencies. The Court lacks personal jurisdiction over the individual defendants due to insufficient service. Rule 4(e) lays out how an individual may be served. It states that a party may be served by

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). Dutchover delivered the summonses and copies of the complaint for all the defendants on Perry, a single defendant. He did not deliver a copy to the individual defendants personally, did not leave a copy at the individuals' residences, and has not provided any reason why Perry, the Chairwoman of the Tribe's governing body, is authorized to accept service for the individuals. Dutchover merely states that Perry is authorized to accept service for the Tribe, not the individuals. "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed.R.Civ.P. 4." Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986). Therefore, the claims against the individual defendants are dismissed for lack of personal jurisdiction and insufficient service. While the Court recognizes the added difficulty in serving the defendants while the reservation was closed due to COVID-19, Dutchover did not make any attempts to request permission from the Court for alternate methods of service. The magistrate judge encouraged Dutchover to consider whether alternative methods of service might have been helpful. Instead of filing a motion for alternative service, Dutchover delivered service to Perry for all the defendants. Additionally, Dutchover did not make any attempt to serve the defendant who does not live on the reservation and was not limited by the COVID-19 closure. Dutchover showed diligence in his attempts to serve originally but has not shown here that good cause or excusable neglect warrant another extension of time to effectuate service. Instead of requesting an alternative method of service, Dutchover merely improperly served one defendant on behalf of all the defendants. As such, the claims against the individual defendants are dismissed and an extension of time to serve the individual defendants is not warranted.

### G. State Law Claims

The Tribe, including any corporate arm of the Tribe, has not waived its sovereign immunity and the claims against it are dismissed. The claims against the individuals are dismissed as well for lack of personal jurisdiction and lack of sufficient service. Absent the

federal claims, the Court no longer has original jurisdiction and only exercises supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(a). The Court may decline to exercise supplemental jurisdiction over remaining state law claims when the only federal claims are extinguished. See 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare of Az., Inc., 715 F.3d 1146, 1156 (9th Cir. 2013). Therefore, the Court declines to exercise supplemental jurisdiction over the state law claims and the remaining claims for civil conspiracy, intentional/negligent infliction of emotional distress, and negligent hiring/retention are dismissed.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF #28) is **GRANTED**.

Dated this 3rd day of May, 2021.

_____
Kent J. Dawson
United States District Judge